Citation Nr: AXXXXXXXX
Decision Date: 07/14/21 Archive Date: 07/14/21

DOCKET NO. 190713-13301
DATE: July 14, 2021

ORDER

A rating of no more than 20 percent for service-connected right lower extremity radiculopathy is granted throughout the period on appeal, subject to the law and regulations governing the award of monetary benefits.

A rating of no more than 20 percent for service-connected left lower extremity radiculopathy is granted throughout the period on appeal, subject to the law and regulations governing the award of monetary benefits.

FINDINGS OF FACT

1. During the period under consideration, the radiculopathy of the Veteran's lower extremities has more nearly approximated than not the criteria of moderate incomplete paralysis of the sciatic nerve.

2. Neither the Veteran's right nor left lower extremity radiculopathy was manifested by moderately severe incomplete paralysis during the relevant time frame.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran's favor, the criteria for a rating of no more than 20 percent for service-connected right lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 U.S.C. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, Diagnostic Code 8520.

2. Resolving reasonable doubt in the Veteran's favor, the criteria for a rating of no more than 20 percent for service-connected left lower extremity radiculopathy have been met. 38 U.S.C. §§ 1155, 5107; 38 U.S.C. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, Diagnostic Code 8520.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from August 1981 to August 2005.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2019 rating decision issued by a Department of Veterans Affairs (VA) Regional Office. The Veteran timely appealed to the Board in July 2019, requesting direct review of the evidence considered by the agency of original jurisdiction (AOJ). See July 2019 VA Form 10182; 38 C.F.R. §§ 20.201, 20.202(b)(1).

In March 2020, the Board issued a decision that, in pertinent part, denied ratings in excess of 10 percent for service-connected radiculopathy of the right and left lower extremities. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In January 2021, the Court granted a Joint Motion for Partial Remand (JMPR) filed by the parties to the appeal (the Veteran, through an attorney, and representatives from VA General Counsel), thereby vacating the Board's decision to the extent that it denied ratings in excess of 10 percent for the service-connected radiculopathies of the Veteran's lower extremities. The parties agreed that those portions of the Board's decision addressing matters not expressly contemplated by JMPR were to remain undisturbed.

1. Entitlement to a rating in excess of 10 percent for service-connected right lower extremity radiculopathy

2. Entitlement to a rating in excess of 10 percent for percent for service-connected left lower extremity radiculopathy

Disability evaluations are determined by the application of a schedule of ratings, which is in turn based on the average impairment of earning capacity caused by a given disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the evaluations to be assigned to the various disabilities.

If there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. If different disability ratings are warranted for different periods of time over the life of a claim, "staged" ratings may be assigned. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119, 125-26 (1999).

The radiculopathy of the Veteran's lower extremities has been evaluated pursuant to the criteria found at 38 C.F.R. § 4.124a, Diagnostic Code 8520. Under that diagnostic code, complete paralysis of the sciatic nerve, which is rated as 80 percent disabling, contemplates the foot dangling and dropping, no active movement possible of muscles below the knee, and flexion of the knee weakened or (very rarely) lost. Incomplete paralysis of the sciatic nerve warrants a 60 percent evaluation if it is severe, with marked muscular atrophy; a 40 percent evaluation if it is moderately severe; a 20 percent evaluation if it is moderate; and a 10 percent evaluation if it is mild.

The terms "mild," "moderate," and "severe" are not defined in the Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6. The use of terminology such as "moderate" or "severe" by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

The Board does note, for reference and illustrative purposes, that the definition for "mild"" includes not very severe. WEBSTER'S II NEW COLLEGE DICTIONARY at 694 (1995). In addition, a synonym for "mild" is "slight" and definitions for "slight" include small in size, degree, or amount. Id at 1038. The definitions for "moderate" include of average or medium quantity, quality, or extent. Id. at 704. Finally, definitions for "severe" include extremely intense. Id. at 1012. It is also noted that the term "moderately severe" indicates impairment that is considered more than "moderate," but not to the extent as to be considered "severe."

The Board also acknowledges that VA's Adjudication Manual, M21-1, III.iv.4.N.4.c (Nov. 16, 2017) discusses the terminology in 38 C.F.R. § 4.124a. The Manual indicates the following with regard to "mild": As this is the lowest level of evaluation for each nerve this is the default assigned based on the symptoms, however slight, as long as they were sufficient to support a diagnosis of the peripheral nerve impairment for service connection purposes. In general, look for a disability limited to sensory deficits that are lower graded, less persistent, or affecting a small area. A very minimal reflex or motor abnormality potentially could also be consistent with mild incomplete paralysis.

The Manual indicates with regard to "moderate": Symptoms will likely be described by the claimants and medically graded as significantly disabling. In such cases a larger area in the nerve distribution may be affected by sensory symptoms. Other sign/symptom combinations that may fall into the moderate category include combinations of significant sensory changes and reflex or motor changes of a lower degree, or motor and/or reflex impairment such as weakness or diminished or hyperactive reflexes (with or without sensory impairment) graded as medically moderate.

The Manual notes that the moderately severe evaluation level is only applicable for involvement of the sciatic nerve. This is the maximum rating for sciatic nerve neuritis not characterized by the organic changes specified in 38 C.F.R. § 4.123. Motor and/or reflex impairment (for example, weakness or diminished or hyperactive reflexes) at a grade reflecting a high level of limitation or disability is expected. Atrophy may be present. However, for marked muscular atrophy see the criteria for a severe evaluation under 38 C.F.R. § 4.124a, Diagnostic Code 8520.

The Manual indicates with regard to "severe": In general, expect motor and/or reflex impairment (for example, atrophy, weakness, or diminished or hyperactive reflexes) at a grade reflecting a very high level of limitation or disability. Trophic changes may be seen in severe longstanding neuropathy cases. For the sciatic nerve (38 C.F.R. § 4.124a, DC 8520) marked muscular atrophy is expected. Even though severe incomplete paralysis cases should show findings substantially less than representative findings for complete impairment of the nerve, the disability picture for severe incomplete paralysis may contain signs/symptoms resembling some of those expected in cases of complete paralysis of the nerve. Neuritis characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain should be rated as high as severe incomplete paralysis of the nerve (38 C.F.R. § 4.123).

Prior to November 2017 revisions, VA's Adjudication Procedures Manual M21-1, Part III, Subpart iv, Chapter 4, § G(4)) defined "mild" incomplete paralysis as demonstrating subjective symptoms or diminished sensation; "moderate" incomplete paralysis as featuring the absence of sensation confirmed by objective findings; and "severe" incomplete paralysis as featuring more than sensory findings (such as atrophy, weakness, and diminished reflexes).

In June 2016, VA amended the M21-1 adjudication manual "to further clarify the intent of VA's policy," and the relevant portion of the M21-1 adjudication manual included the following: Important: This provision does not mean that if there is any impairment that is non-sensory (or involves a non-sensory component) such as a reflex abnormality, weakness or muscle atrophy, the disability must be evaluated as greater than moderate. Significant and widespread sensory impairment may potentially indicate the same or even more disability than a case involving a minimally reduced or increased reflex or minimally reduced strength.

Further, the Court held in Miller v. Shulkin, 28 Vet. App. 376, 380 (2017), that "[a]lthough the note preceding § 4.124a directs the claims adjudicator to award no more than a 20% disability rating for incomplete paralysis of a peripheral nerve where the condition is productive of wholly sensory manifestations, it does not logically follow that any claimant who also exhibits non-sensory manifestations must necessarily be rated at a higher level."

The Adjudication Manual is not binding on the Board. DAV v. Sec'y of Veterans Affairs, 859 F.3d 1072, 1077 (Fed. Cir. 2017) ("The M21-1 Manual is binding on neither the agency nor tribunals"). Nevertheless, it does provide useful guidance in defining these terms, particularly if the Veteran demonstrates impairment consistent with higher rating(s) than currently in effect. Stated another way, the Board will look to see if there are findings that would warrant a higher rating under the M2-1 provisions, but would not deny the benefit sought on appeal if those provisions are not satisfied.

The parties to the JMPR filed with the Court in this case agreed that the Board's March 2020 decision on this matter contained inadequate reasons and bases. In pertinent part, the parties agreed that the Board's decision failed to address conflicting evidence. Specifically, although the Board noted a November 2018 private medical evaluation from Dr. T, the Board omitted any discussion of Dr. T's finding the Veteran had a positive straight leg test while noting a negative such test result during a January 2019 VA examination. Further, the Board did not discuss the symptoms listed by Dr. T, nor did it address the probative weight to be afforded to that opinion in light of the conflicting medical evidence from the January 2019 VA examination.

Regarding Dr. T's finding of a positive straight leg raising test, it was stated that straight leg raise was positive on the left at 20 degrees with crossed pain to the right; and it was positive on the right at 30 degrees with crossed pain to the left. In addition, Dr. T stated that valsalva was simultaneously positive right and left sciatic distribution which strongly indicated central canal stenosis which was virtually untreatable.

Although the January 2019 VA examination found straight leg to be negative for both lower extremities, the law mandates resolving reasonable doubt in favor of the Veteran regarding degree of disability. See 38 C.F.R. § 4.3. The findings by Dr. T support the Veteran's complaints regarding lower extremity pain attributable to the service-connected disabilities. For example, at the January 2019 VA examination he reported moderate intermittent pain of both lower extremities. Moreover, Dr. T's statement indicates the symptomatology of the radiculopathy was not responsive/ameliorative by treatment. In other words, that there would not be greater symptomatology but for his medical treatment. See Jones v. Shinseki, 26 Vet. App. 56 (2012).

Dr. T also noted in the November 2018 statement that the Veteran had left and right sciatic pain and paresthesias involving the left and right sciatic distribution; that he had left and right lower extremity weakness which was very problematic on stairs; and that the pain and paresthesias intensified with sitting, standing, walking, and stairs. Moreover, Dr. stated that the Veteran's flexors and extensors of the left and right leg and thigh were weak by a factor of 50 percent.

The Board finds that Dr. T's description of the weakness of the lower extremities indicates moderate impairment, i.e., impairment of medium quantity, quality, or extent. This appears consistent with the level of weakness associated with moderate incomplete paralysis pursuant to the pertinent M21-1 provisions.

The Board notes that the January 2019 VA examiner found the Veteran to have only mild radiculopathy of both the right and left lower extremity. However, the Board is not bound by that description even though it is probative evidence for consideration. 

The Board also observes that motor strength testing on the January 2019 VA examination were all 5/5 (normal) for the lower extremities. However, Dr. T's statement indicates there was more impairment with prolonged use such as sitting, standing, walking, and stairs. As such, the report of 50 percent weakness appears to be indicative of the type of impairment which would be present with prolonged use.

In light of the foregoing, and resolving reasonable doubt in favor of the Veteran, the Board finds that, during the period under consideration, the radiculopathy of his lower extremities more nearly approximated than not the criteria of moderate incomplete paralysis. See 38 C.F.R. §§ 4.3, 4.7. Accordingly, ratings of 20 percent are warranted for each lower extremity.

The Board further finds that a rating in excess of 20 percent is not warranted for the right or left lower extremity radiculopathy. A thorough review of the record does not demonstrate impairment of either lower extremity which is more than moderate, i.e., more than average or medium quantity, quality, or extent. In pertinent part, Dr. T did not indicate the Veteran would have more than 50 percent weakness of either lower extremity. In addition, as noted, the report of 50 percent weakness appears to be indicative of the level of impairment that would be present following prolonged use.

The Board also notes that in addition to moderate intermittent pain, the Veteran only reported mild paresthesias and/or dysesthesias. He further reported that neither extremity was manifested by constant pain or numbness. In short, the Veteran himself reported no more than moderate symptoms at the VA examination, and there is no report of greater symptoms in the other evidence that was before the AOJ at the time of the decision in this case.

In addition, the January 2019 VA examination reflects that sensory evaluation was normal for the right and left upper anterior thigh, thigh/knee, lower leg/ankle, and foot/toes. Reflexes were 2+ (normal) for the right and left knees and ankles. As noted, motor strength testing was 5/5 (normal) throughout the lower extremities. It was also noted he did not have muscle atrophy. 

Simply stated, little or no functional impairment was demonstrated of the lower extremities even with the Veteran's complaints of intermittent pain and paresthesias and/or dysesthesias. As detailed, Dr. T's November 2018 statement indicates at most 50 percent weakness following prolonged use. Moreover, Dr. T's statement did not explicitly refute the January 2019 VA examination's findings of normal reflexes and sensory evaluation. 

In light of the foregoing, the Board finds that the record available for review demonstrates impairment reflective of no more than moderate incomplete paralysis of the lower extremities; and that neither lower extremity exhibited impairment reflective of moderately severe incomplete paralysis at any time during the pendency of this case. The preponderance of the evidence is against a rating in excess of 20 percent for either of these service-connected disabilities, to include on the basis of "staged" rating(s). To that extent, the appeal is denied.

 

 

DAVID A. BRENNINGMEYER

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board John Kitlas, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.